UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 25-CR-20346-JEM

UNITED STATES OF AMERICA

v.

MARCOS TOMAS PEREZ

     **Defendant.**

_____/

**DEFENDANT MARCOS PEREZ'S SENTENCING MEMORANDUM AND
MOTION FOR VARIANCE FROM ADVISORY GUIDELINES**

     Defendant, Marcos Perez, files this Sentencing Memorandum pursuant to 18 U.S.C. §3553 and 18 U.S.C §3661 and respectfully moves this Court for a reduction from the advisory sentence recommended by the Presentence Investigation Report, and states as follows:

     Marcos Perez is to be sentenced at *12:00 p.m. on October 30, 2025*. Attached to this Memorandum are a series of letters about Mr. Perez attesting to his reputation, character, and his role in the lives and work of his family, friends, and supporters.

**I.    INTRODUCTION**

     Marcos Perez stands before the Court for sentencing, having been convicted by plea of one count of interstate transportation of stolen goods. 18 U.S.C. § 2314. The Presentence Investigation Report determined, pursuant to the U.S. Sentencing Guidelines, that Mr. Perez's base level offense was 6 points. It then added 16 points for actual, probable or intended loss – (1.5 million but less than $3.5 million). PSR ¶ 31. Perez accumulated $1.9 million. PSR ¶ 24. An additional 2 points were added for being in the business of receiving and selling stolen property. PSR ¶ 40.  Total adjusted offense level is 24 points. PSR ¶ 44.

Based upon reductions for Perez qualifying for Zero-Point Offender (-2 points), acceptance of responsibility (-2 points), and early acceptance of responsibility (-1 point), the total offense level is adjusted to 19 points. PSR ¶¶ 45-48. Without any further reductions, the sentencing guidelines imprisonment range is 30 – 37 months. As discussed below, Perez assisted and continues to assist the government in furthering its investigation.

Regardless of its advisory nature, the Court must consult the guidelines before sentencing. *See Kimbrough v. United States*, 522 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005).

Thus, the District Court should only consult the guidelines to effectuate the purpose of the statutory sentencing requirements. *Id.* (citing 18 U.S.C § 3553(a)). Once the guidelines are calculated and consulted, the Court has discretion in this sentencing from 30 months incarceration up to the statutory maximum. Mr. Perez appeals to the Court's discretion to sentence him to a sentence below the sentencing guidelines based upon his background, character, and cooperation.

## II.   BACKGROUND

*History and Characteristics of the Defendant*

Until the point in his life when Mr. Perez began participating in this scheme, he lived an exemplary life of service and good deeds. Today, he is extremely remorseful, recognizing he made victims of the National Basketball Association, the Miami Heat, his family, and everyone who believed in and looked up to him.

Regardless of his failure in decision-making, Mr. Perez has received overwhelming support from his community, family, friends, and former law enforcement colleagues. The letters

demonstrate the consistent character traits that have defined his life: generosity, dependability, remorse, and a commitment to helping others.

**Miriam Perez** (wife)

Please do not judge my husband too harshly. "I know that Marcos deeply regrets his behavior that was so out of character for him and given the opportunity, he will spend the rest of his time here on earth making amends for his actions and most assuredly never repeat it."

**Danielle A. Perez, Esq.** (daughter):

"It brings him immense pain to know that his actions may prevent him from being there for my mother's recovery from cancer, walking me down the aisle or greeting his first grandchild."

"I believe that a lifetime of doing good and being a law-abiding citizen is not outweighed by his mistake. That we are not defined by our mistakes or failures, but by how we learn and strive to rise above them."

**Alex Escobar** (neighbor, 20+ years):

"Marcos has been my neighbor and friend for more than twenty years, and that does not change because of what he is facing now. He is someone I trust, someone my family trusts, and someone I will continue to support in whatever ways I can."

**Catherine J. Reyes** (friend since 1986):

"Your Honor through the determination, help and empathy I received from Marcos I have been clean and sober since 1996. I owe a lot of my sobriety to him and his wife."

**Sandy Rivera** (sister-in-law, 36 years):

"Without hesitation, he took out a loan against his own home and gave us $75,000. He never asked questions; he simply believed in us. Thanks to his generosity, we were able to rebuild and create the life we have today."

"I believe these acts speak volumes about his integrity, loyalty, character, and commitment to family."

**Delia Rodrigues, R.N.** (family friend, 13 years):

"Every birthday, while I am thousands of miles away, he FaceTime calls me, and gathers his family with a slice of cake and candle just so they can celebrate with me. These gestures may seem small to some, but to me, they speak volumes about the kind of man he is: thoughtful, kind-hearted, and always thinking of others."

**Christina H. Martinez, Esq.** (future daughter-in-law's sister, 6 years):

"Many people offer of themselves lightly and freely; Marcos follows through and he shows up."

**Wilfredo Abascal** (retired Miami PD Lieutenant, 20+ years):

"In my years in law enforcement, I have heard countless people try to explain away their bad behavior. Marcos is different. He does not deny or minimize. He accepts guilt. He expresses genuine shame."

"During his career in law enforcement, he protected our community and laid his life on the line during several undercover narcotics operations for which he was highly decorated."

**Lt. Jose Antonio Rodriguez (Retired)** (Miami PD colleague):

"Marcos came up with and led Miami's 'See Something, Say Something' campaign. He brought that idea into the department and took it out to the community, to schools, businesses, and government agencies. He set up meetings, gave presentation after presentation, and worked tirelessly to build partnerships."

"Marcos Perez has made a lasting impact on many people, myself included but the deepest impact has been made to our department and our city."

**Albert Pacheco** (brother-in-law, Miami PD retired, 50 years):

"I knew I could trust Marcos to handle the case with honesty, integrity, and without any fear or favor."

"Hurricane Ian hit the West Coast of Florida three years ago. My house in Port Charlotte suffered serious damage and my generator failed. Marcos drove out to us with 15 containers of gas, a generator, an antenna, and 40 cases of water. Seeing him pull up in front of our house brought tears to my eyes. He was our hero when we needed him the most."

**Santiago Bejarano** (disabled neighbor):

"Just last month, my kitten got stuck under the cabinet sink. I panicked and didn't know what to do. Marcos came over immediately, spent hours carefully dismantling the cabinet, rescued my kitten, and then rebuilt the whole thing so no animal could get trapped again. That moment wasn't unusual—it was just another example of the kind of person he is."

"I write it because I believe in telling the full story of a person—and Marcos's story includes a great deal of kindness, generosity, and heart. I also know him to be the man who shows up when someone needs help and who treats people with dignity."

These letters reveal a consistent pattern: Mr. Perez has spent decades serving his community, helping neighbors in need, supporting family and friends through crises, and quietly making life better for those around him. The support has not wavered despite his conviction, demonstrating the deep respect and trust he has earned over a lifetime.

Marcos Perez recognizes his conduct was unlawful and is doing his best to atone for his offense.  He has begun to and will spend the rest of his life making amends for the extremely poor judgment he made when he profited from his crime. At a starting point, in a timely fashion he has accepted responsibility for his crime. Perez confirmed the location of separate bank accounts where a large portion of his ill-gotten gains remain and has transferred those funds to the undersigned attorney's law firm's trust account and directed to pay restitution with those funds. He has complied with all conditions of his pretrial release.

While we recognize that we are asking for a lower sentence than the advisory guidelines suggest, we seek this sentence as we believe that it will meet the goals of sentencing under 18 U.S.C. §3553(a)(2).  While every case presents different facts and circumstances, given the fact that this is Mr. Perez's first offense, his history and characteristics, remorse and acceptance of responsibility, his compliance with his conditions of supervised release, and the collateral consequences of his conviction, we ask for a sentence below the guidelines.



This is Marcos Perez and his wife, Miriam.



This is Roland Martinez, Jr., Marcos's future son-in-law, Danielle A. Perez, his daughter, Marcos and his wife, Miriam, and Jessenia Frick, his long-lost sister he discovered as an adult.

**IV.     SENTENCING FACTORS UNDER 18 U.S.C. §3553(a) FAVOR A LENIENT SENTENCE.**

The Supreme Court and Circuit Courts across the country encourage sentencing courts to exercise great discretion in imposing a just and fair sentence. *See e.g., Spears v. United States*, 555 U.S. 261 (2009); *Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough*, 552 U.S. 85 (2007); *Booker*, 543 U.S. 220 (2005). In exercising its utmost discretion to fashion an appropriate sentence, "the sentencing judge [must] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute. In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and the relevant Guideline policy statements, as well as other traditional sentencing factors. *See* 18 U.S.C. § 3553(a).

*Nature and Circumstances of the Offense.*

Mr. Perez worked for the Miami Heat security department from December 2016 through October 2021, later transitioning to NBA security with similar arena access. PSR ¶18. In his security role, Mr. Perez had access to a physical key unlocking an equipment room at Kaseya Center storing valuable team memorabilia, including game-worn jerseys intended for the future Miami Heat Museum. PSR ¶19. The memorabilia were stored in garment bags containing 15-20 jerseys per bag, along with sneakers and warm-up gear. PSR ¶19. During his employment, he accessed this room multiple times and stole over 400 game-worn jerseys and other memorabilia. PSR ¶19.

Later, Mr. Perez utilized his corporate entity, South Florida Signature Authenticators, Inc., to sell over 400 stolen items using bank accounts, PayPal, and platforms including OfferUp, eBay, Instagram, and iCloud. PSR ¶23. Over three and a half years, Mr. Perez sold over 100 stolen items for approximately $1,900,000, shipping across state lines. PSR ¶24.

On April 3, 2025, law enforcement executed a search warrant at Mr. Perez's residence, seizing nearly 300 remaining stolen jerseys and memorabilia. PSR ¶31. The Miami Heat identified these items as stolen from their facility. PSR ¶31. Included were NBA players' sneakers. PSR ¶31.

On August 4, 2025, a one-count Information was filed. On August 5, 2025, Mr. Perez was arrested. PSR ¶32.

*The Need to Avoid Unwarranted Sentencing Disparities Suggests a Substantially Below Guidelines Sentence in this Case.*

A critical sentencing consideration is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Individuals convicted of the same offense in the Eleventh Circuit have often received significantly below-guidelines sentences. The Presentence Investigation Report sets forth Judiciary Sentencing Information (JSIN) where the Guidelines were level 19 and the Criminal History was 1. The average length of imprisonment imposed was 22 months and the median length of imprisonment imposed was 24 months. PSR ¶ 126.

*Deterrence.*

Another key consideration for a sentencing court is whether the imposed sentence provides sufficient general and specific deterrence. In 18 U.S.C. § 3553(a)(2) to "afford adequate deterrence from criminal conduct" and "to protect the public from further crimes of the defendant." §§ 3553(a)(2)(B) & (C). The first factor contemplates generally deterring the public from committing crimes similar in nature to those in which the defendant has engaged. The second focuses on

deterring the defendant himself from committing future crimes. Mr. Perez submits that both general and specific deterrence have been met in this case. It is unlikely that he will engage in further criminal activity considering his supportive family, his sincere remorse, age, and overall good character.

Marcos Perez's therapist said the following:

> Mr. Perez expresses deep regret and remorse for the consequences of his actions legally and for his family. He also expresses sincere apologies to his law enforcement mentors and to the community, acknowledging this was a mistake for which he takes full responsibility. Mr. Perez is the sole caregiver for his wife, who is undergoing chemotherapy, radiation, and proton treatment for breast cancer, requiring his daily wound care and transportation to multiple hospital visits weekly. This ongoing emotional and physical stressor further demonstrates the hardship Mr. Perez is managing alongside the legal consequences he faces.

Exhibit – 1.

Also, in a twenty-four-year career with the Miami Police Department, Marcos Perez served with honor and received commendations throughout.  Composite Exhibit – 2.  Notably, he was disciplined once. It was related to a minor car accident, in which he accepted responsibility for causing the accident. Exhibit – 3. In short, Perez had a distinguished career and accepted responsibility for his faults.

Title 18 U.S.C. § 3553 provides that the Court should impose "a sentence sufficient but not greater than necessary" to provide just punishment for the defendant, and it requires the Court to consider "the nature and circumstances of the offense and history and characteristics of the defendant."  Pursuant to 18 U.S.C. § 3553, the Court must also consider the need for the sentence it imposes "to reflect the seriousness of the offense, [and] to promote respect for the law."  18 U.S.C. § 3553(a)(1) and (2)(A).

10

With respect to general deterrence, Mr. Perez submits that a short prison sentence together with home detention and supervised release, with the restitution required by his plea agreement, will provide good general deterrence to future criminal conduct of others, as required by Section 3553(a)(2)(B), to the extent such deterrence can be effective. When the Court imposes the sentence Mr. Perez will be a convicted felon who has already suffered significant public shame. No one hearing of Mr. Perez's sentence could fairly describe it as inappropriately "soft on crime," or an invitation to commit a similar crime.

The third factor listed in 18 U.S.C. § 3553(a)(2)(C) focuses on specific deterrence of further criminal conduct by the defendant himself. It requires to the Court to consider the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553 (a)(2)(C). If the Court imposes an a year and a day term of imprisonment followed by home confinement on Mr. Perez, followed by a three-year term of supervised release, such a sentence will certainly provide good specific deterrence to prevent Mr. Perez from committing any further crimes, because he will be monitored by a probation officer for an extended period, and he will therefore have little opportunity to engage in further criminality.

The specific deterrence that has resulted from the investigation and prosecution of this matter includes significant collateral consequences that will be suffered by Mr. Perez including public obloquy and disgrace, an enormous financial obligation, and the entry of a Judgment against Mr. Perez will never be entrusted again with a job like the one he had for the NBA.

V.      **VARIANCES ARE APPROPRIATE.**

>   *5H1.6 - Departures Based on Loss of Caretaking or Financial Support –*
>
>>   (B) **Departures Based on Loss of Caretaking or Financial Support.**—A departure under this policy statement based on the

11

> loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
>
> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>
> (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>
> (iv) The departure effectively will address the loss of caretaking or financial support

This is the most significant reason Mr. Perez should not be sentenced to a long incarceration is that he is dedicated to his wife's health and happiness. She is ill with cancer and is receiving treatment. Exhibit – [to be filed under seal]. Mr. Perez cares for his wife at home as well as escorts and accompanies her to her various medical appointments. Most importantly, he gives her companionship and support that only a loving husband can. He, in this role cannot be replaced.

*Age*

Mr. Perez is 62 years old and has a series of health issues.

Any sentence greater than two years leaves little hope a productive re-entry into society.

> (1) Age may be a reason to depart downward only if and to the extent permitted by § 5H1.1." U.S.S.G. § 5K2.22. Under § 5H1.1, "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home

confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1.

*United States v. Chase*, 367 Fed. Appx. 979, 983 (11th Cir. 2010) *cert. denied,* 131 S. Ct. 167 (U.S. 2010) (unpublished). The guidelines state as a matter of policy that age "is not ordinarily relevant in determining whether a departure is warranted," at least not unless "the defendant is elderly and infirm." U.S.S.G. § 5H1.1. *United States v. Irey*, 612 F.3d 1160, 1218 (11th Cir. 2010). To comply with the directives of Congress -- a uniform national sentencing policy regarding these common sentencing factors, the Sentencing Commission issued policy statements concluding that "age," "family ties," and "community ties" are relevant to sentencing only in unusual cases. *See* United States Sentencing Commission, Guidelines Manual §§ 5H1.1 (age). *Gall v. United States*, 552 U.S. 38, 70 (2007).

When departures are applicable, this Circuit permits a downward departure for age considerations plus infirmity. *United States v. Stumpner,* 174 Fed. Appx. 522, 524 (11th Cir. 2006) (unpublished). *See also, United States v. Brooke*, 308 F.3d 17, 20 n. 2 (D.C. Cir. 2002); *United States v. Powell*, 576 F.3d 482, 499 (7th Cir. 2009) (they may be a "reason to depart downward" when a defendant is either "elderly" or "seriously infirm." U.S.S.G. §§ 5H1.1, 5H1.4; *United States v. Lee*, 454 F.3d 836, 839 (8th Cir. 2006) ("similarly, age is normally not relevant to sentencing, unless the defendant is elderly or infirm"). Mr. Perez encourages the Court to consider the fact he is elderly separately and in conjunction with his health issues. *See* Exhibit -- 5.

The fact that Mr. Perez is sixty-two and has medical issues is strong evidence he is harmless and will not offend again. This bears on the sentencing goal of preventing him (as distinct from deterring him and others) from committing crimes by incarcerating him. In still other words, the older and weaker the defendant is, the less likely he is to recidivate, and this argues for a shorter sentence. *See United States v. Bullion*, 466 F.3d 574, 576 (7th Cir. 2006).

Post-*Booker,* this Circuit has not opined on the applicability of § 5H1.1's policy statement that a district court must focus on age in imposing a non-Guidelines ("reasonable") sentence. Other circuits, however, have held such consideration appropriate. *United States v. Smith,* 445 F.3d 1, 5 (1st Cir.2006) (holding district court did not err, *inter alia,* by considering age because "[t]hat a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant"). *United States v. Lee,* 454 F.3d 836, 839 (8th Cir.2006) ("age is normally not relevant to sentencing, unless the defendant is elderly or infirm"). *United States v. Simmons*, 470 F.3d 1115, 1130-31 (5th Cir. 2006).

The fact there is no published opinion on the applicability of age and infirmity of the defendant, does not undermine the policy reasons for them as sentencing factors. Due to Mr. Perez's age and condition society bears a low chance of recidivism and threat to the community; but obtains a deterrent effect. All these values still have meaning post-*Booker* and therefore, Mr. Perez should get the benefit of those factors in a sentencing variance.

*Physical condition*

§5H1.4 – Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction (Policy Statement)

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Mr. Perez suffers from various health issues. He has issues with his heart, hips, knee, blood pressure and cholesterol issues. *See* PSR ¶¶ 69-71, and documents to be filed under seal. Mr. Perez requires multiple daily prescription medications to manage his conditions. These serious, chronic

medical conditions require ongoing specialized care, regular monitoring, and access to appropriate medications and medical treatment.

*No Prior Criminal History*

§4A1.1 Criminal History and Criminal Livelihood – Part A – Criminal History, Introductory Comment

> The Comprehensive Crime Control Act sets forth four purposes of sentencing. (*See* 18 U.S.C. § 3553(a)(2).) A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.
>
> The specific factors included in §4A1.1 and §4A1.3 are consistent with the extant empirical re-search assessing correlates of recidivism and patterns of career criminal behavior. While empirical research has shown that other factors are correlated highly with the likelihood of recidivism, *e.g.*, age and drug abuse, for policy reasons they were not included here at this time. The Commission has made no definitive judgment as to the reliability of the existing data. However, the Commission will review additional data insofar as they become available in the future.

Mr. Perez has no prior criminal record and no criminal history points. Due to this independent factor, he is less likely to reoffend. This factor standing alone justifies a variance to supervised release or home confinement upon release from a prison sentence. *See United States v. Tomko,* 562 F.3d 558 (3d Cir. 2009) (en banc) (tax offense); *United States v. Autery,* 555 F.3d 864 (9th Cir. 2009) (possession pornography sentenced to supervised release).

*Commitment to the Community and Giving Back*

Mr. Perez helps his family, neighbors, and people in which he has no familial relationship. He gives charity through the Red Cross and his church. PSR ¶ 63.

*Providing Restitution*

Marcos Perez had no restraint on his bank accounts as a condition of bond. His "business" had a separate bank account. No funds have been withdrawn or transferred. Mr. Perez will pay $276,694.13 via Trust Account check at sentencing.

*5k1.1 – cooperation*

Marcos Perez has agreed to cooperate since he was confronted by federal agents at his home. He has cooperated in any way asked. The government has represented to Mr. Perez's counsel that in the next 60 days, the government will advise the Court the full extent of cooperation through a Rule 35 motion.

**VI.    Other requests.**

<u>Recommendation to the Bureau of Prisons (FCI – Miami)</u>

Marcos Perez's family resides in Miami. He requests the Court to recommend that Perez be assigned to FCI Miami, if the Court sentences Mr. Perez to a period of incarceration.

<u>Surrender date.</u>

Marcos Perez requests this Court permit his surrender after sentencing. He appeals to the Court's discretion and advises the Court of various significant upcoming events in his life.

His wife has cancer, and he is supporting her through the surgery, radiation, and chemotherapy process. Her treatment and recovery ends on *December 1, 2025*. She has surgery scheduled for *April, 2026*.

Marcos Perez's daughter, Danielle, is getting married on *March 14, 2026*. He would like to be there for her as a father walking her down the aisle.

*Defendant's recommendation.*

These sections of the Code direct the Court to consider the defendant and his actions holistically, and to "provide just punishment for the offense" considering all the facts known to the Court. In the present case, we respectfully submit that, after a measured and thoughtful consideration of all the relevant facts, the Court should sentence Mr. Perez to *a year and a day* of incarceration.

*Alternatively, or in combination* with a sentence of home detention should be imposed. We submit that this sentence is certainly severe enough to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). There is no question that a substantial sentence of home detention is a serious one. *Compare Gall v. United States,* 552 U.S. 38, 48 (2007) (a probationary sentence imposes a significant restraint on the liberty of a defendant). In fact, no one could characterize the sentence proposed here as a "slap on the wrist," given all the relevant circumstances.

A sentence of this kind will allow Mr. Perez to continue to manage his wife's health condition, and to support his family emotionally, while seriously restricting his liberty before he faces deportation. That is precisely the sort of sentence that 18 U.S.C. § 3553(a)(1) encourages the Court to impose. Moreover, as noted above, a sentence of home confinement will be comparable to the sort of sentence – in a federal prison camp – a United States citizen would serve.

**VII.  CONCLUSION**

A below-guideline sentence is supported by all the above factors given Mr. Perez's zero criminal history, health conditions, 24-year law enforcement career serving the community, acceptance of responsibility, cooperation, and family circumstances including his wife's ongoing cancer treatment, in which he is essential to her support.

Based upon the above, Marcos Perez requests this Court sentence him to one-year and one-day to the Bureau of Prisons in Federal Correctional Institution in Miami and be permitted to turn himself in on one of the requested surrender dates.

Respectfully submitted,

\_\_\_/s/\_\_Robert Buschel_____
Robert C. Buschel
Florida Bar No. 0063436

BUSCHEL GIBBONS, P.A.
501 East Las Olas Boulevard
Third Floor
Fort Lauderdale, FL 33301
Tele:   (954) 530-5748 (direct)
Email: Buschel@BGlaw-pa.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

| *United States Attorney's Office for the Southern District of Florida* | *United States Probation Office* |
|---|---|
| AUSA Robert F. Moore | Julian F. Febus, U.S. Probation Officer |