**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20346-MARTINEZ**

**UNITED STATES OF AMERICA**

**v.**

**MARCOS TOMAS PEREZ,**

Defendant.
_______________________________________/

**PRELIMINARY ORDER OF FORFEITURE OF SUBSEQUENTLY IDENTIFIED ASSETS**

**THIS MATTER** is before the Court upon the *United States' Unopposed Motion for Preliminary Order of Forfeiture of Subsequently Identified Assets* **[ECF No. 77]** against Defendant Marcos Tomas Perez (the "Defendant") pursuant to Federal Rule of Criminal Procedure 32.2(e)(1)(A). The Court has reviewed the briefing, the record, and is otherwise fully advised.

After careful consideration, the Court finds as such:

1. On October 23, 2025, this Court entered a Preliminary Order of Forfeiture, in which the Court forfeited, pursuant to third-party interests, "[a]ny additional jerseys or sports memorabilia later identified through investigation" and a list of already-seized assets, numbered items a. through oooo. Dkt. No. 25 at 2-3. The forfeiture was ordered pursuant to 18 U.S.C. § 981(a)(1)(C). Preliminary Order of Forfeiture, Dkt. No. 25.

2. The United States Probation Office conducted a presentence investigation. *See* Presentence Investigation Report ("PSR"), Dkt. No. 19. The PSR described how, over a multi-year period, the Defendant stole over 400 items from the Miami Heat and sold over 100, often shipping them across state lines. *Id.* at ¶ 22-24. The PSR specifically described how the Defendant sold a

specific Miami Heat NBA Finals game-worn LeBron James jersey for approximately $100,000, which later resold at auction for $3,700,000 (the "$3M Jersey"). *Id.* at ¶ 24. It also specifically described how the Defendant utilized an unindicted co-conspirator to broker deals with memorabilia collectors and split the profits, using four contracts that included NBA jerseys with specific identification numbers (the "contracts"). *Id.* at ¶ 22.

3. On January 7, 2026, the Court entered its Judgment and sentenced the Defendant to 36 months imprisonment for the offense of transportation of stolen goods in violation of 18 U.S.C. § 2314. Dkt. No. 48. The Judgment incorporated the Preliminary Order of Forfeiture. *Id.*

4. The United States has continued to investigate the criminal conduct in this case. As part of its investigation, it has located additional items the Defendant stole from the Miami Heat and sold. The United States investigated the circumstances surrounding the acquisition and auction (where applicable) of these additional jerseys and sports memorabilia.

5. The government identified and obtained numerous additional jerseys that were voluntarily submitted to the FBI. Where consent was given to forfeit them, the FBI processed the items through its administrative forfeiture process. Where consent was not given, the items are included in this motion.

6. The investigation also identified potential third-party claimants to the forfeiture of these additional items sought for forfeiture. The government has communicated with counsel for potential claimants regarding forfeiture. For example, the investigation identified the location of the $3M jersey and led to communications with counsel for buyers and an auction house. The government has also communicated with counsel for the victim, the Miami Heat.

7. In its motion, the United States seeks to forfeit the following additional jerseys or sports memorabilia identified through investigation as subject to forfeiture in this case:

i. LeBron James 2011 Miami Heat NBA Finals Game-Worn Home Jersey, NBA Identification No. MHE00208;

ii. LeBron James 2013 Sneakers from Ring Ceremony Player-Worn, 1 of 1 Nike Sneakers;

iii. LeBron James 2013 NBA Finals Game Worn Jersey Game 7, NBA Identification No. MHE00910 (the "$3M jersey");

iv. LeBron James 2012 Miami Heat Playoffs Game Worn Home Jersey;

v. LeBron James 2013 NBA Championship Ring Ceremony Jacket;

vi. Shaquille O'Neal Red Game Worn Jersey, Inventory No. 2311;

vii. Shaquille O'Neal Black Game Worn Jersey, Inventory No. 2317;

viii. Jimmy Butler White Game Worn Jersey, Inventory No. 2337;

ix. Dwayne Wade Red Game Worn Jersey, Inventory No. 2354;

x. Shaquille O'Neal Black Game Worn Jersey, Inventory No. 2363;

xi. Jimmy Butler White Game Worn Jersey, Inventory No. 2371;

xii. Jimmy Butler Black Playoffs Game Worn Jersey, Inventory No. 2379;

xiii. Shaquille O'Neal White Game Worn Jersey, Inventory No. 2405;

xiv. Dwayne Wade White Playoffs Game Worn Jersey, Inventory No. 2408;

xv. Chris Bosh Jersey, NBA Identification No. MHE01263;

xvi. Dwayne Wade Jersey, NBA Identification No. MHE00770; and

xvii. Shaquille O'Neal Jersey Number 32, Jersey Size 62, with a 2004-2005 tag.

These 17 items are either in FBI custody or will be taken into custody upon the entry of this forfeiture order.

8. As set forth in the Factual Proffer, ECF No. 14, the Defendant worked for the Miami Heat's security department and the National Basketball Association in a similar security capacity. *Id.* at 1. The Defendant had access to an equipment room within the Heat arena, where valuable memorabilia, including jerseys, were stored. *Id.* During his employment, the Defendant accessed this room and stole over 400 game-worn jerseys and other memorabilia. *Id.*

9. The Defendant stole the 17 items that are the subject of this motion from the Miami Heat and sold them. Currently, they are in the possession of the FBI or an auction house. They fall within the Preliminary Order of Forfeiture's general forfeiture clause in item No. 1: "Any additional jerseys or sports memorabilia later identified through investigation." Dkt. No. 25 at 2, 4. The government identified these stolen items as subject to forfeiture through its ongoing investigation that continued after the Court's entry of the Preliminary Order of Forfeiture. Dkt. No. 25.

10. The United States represents that starting in or around September 2025 continuing through the present, the government has been communicating with counsel representing buyers and an auction house regarding the location and potential claims to the $3M jersey (item no. iii), which is traced to the Defendant. In or about February 2026, the government's investigation revealed the location of items no. i, ii, and iv, and that they are traced to the Defendant. Further, in March 2026, the government learned from a buyer about item no. v, also traced to the Defendant. The government has cross-referenced items no. vi-xiv, in the possession of the FBI, by comparing them to the Defendant's spreadsheet of stolen goods. Finally, the government has cross-referenced items no. xv-xvii, in the possession of the FBI, as items sold through the contracts prepared by an unindicted co-conspirator to broker deals with memorabilia collectors and split the profits with the Defendant. PSR, Dkt. No. 19 at ¶ 22.

11. To the extent there is a third-party interest to any forfeited asset, such claims are addressed after the property is preliminary forfeited, in third-party ancillary proceedings. *See* 21 U.S.C. § 853(k), (n); Fed. R. Crim. P. 32.2; *United States v. Couch*, 906 F.3d 1223, 1228 (11th Cir. 2018) (recognizing that § 853(k) "expressly bars third parties from intervening in forfeiture proceedings to claim an interest in property subject to forfeiture").

12. Therefore, based on the record in this case, the following specific property is directly subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and Fed. R. Crim. P. 32.2(e)(1)(A):

i. LeBron James 2011 Miami Heat NBA Finals Game-Worn Home Jersey, NBA Identification No. MHE00208;

ii. LeBron James 2013 Sneakers from Ring Ceremony Player-Worn, 1 of 1 Nike Sneakers;

iii. LeBron James 2013 NBA Finals Game Worn Jersey Game 7, NBA Identification No. MHE00910 (the "$3M jersey");

iv. LeBron James 2012 Miami Heat Playoffs Game Worn Home Jersey;

v. LeBron James 2013 NBA Championship Ring Ceremony Jacket;

vi. Shaquille O'Neal Red Game Worn Jersey, Inventory No. 2311;

vii. Shaquille O'Neal Black Game Worn Jersey, Inventory No. 2317;

viii. Jimmy Butler White Game Worn Jersey, Inventory No. 2337;

ix. Dwayne Wade Red Game Worn Jersey, Inventory No. 2354;

x. Shaquille O'Neal Black Game Worn Jersey, Inventory No. 2363;

xi. Jimmy Butler White Game Worn Jersey, Inventory No. 2371;

xii. Jimmy Butler Black Playoffs Game Worn Jersey, Inventory No. 2379;

xiii. Shaquille O'Neal White Game Worn Jersey, Inventory No. 2405;

xiv. Dwayne Wade White Playoffs Game Worn Jersey, Inventory No. 2408;

xv. Chris Bosh Jersey, NBA Identification No. MHE01263;

xvi. Dwayne Wade Jersey, NBA Identification No. MHE00770; and

xvii. Shaquille O'Neal Jersey Number 32, Jersey Size 62, with a 2004-2005 tag.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1. Pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853 and Rule 32.2(e)(1)(A), the following specific property is hereby forfeited and vested in the United States of America:

i. LeBron James 2011 Miami Heat NBA Finals Game-Worn Home Jersey, NBA Identification No. MHE00208;

ii. LeBron James 2013 Sneakers from Ring Ceremony Player-Worn, 1 of 1 Nike Sneakers;

iii. LeBron James 2013 NBA Finals Game Worn Jersey Game 7, NBA Identification No. MHE00910 (the "$3M jersey");

iv. LeBron James 2012 Miami Heat Playoffs Game Worn Home Jersey;

v. LeBron James 2013 NBA Championship Ring Ceremony Jacket;

vi. Shaquille O'Neal Red Game Worn Jersey, Inventory No. 2311;

vii. Shaquille O'Neal Black Game Worn Jersey, Inventory No. 2317;

viii. Jimmy Butler White Game Worn Jersey, Inventory No. 2337;

ix. Dwayne Wade Red Game Worn Jersey, Inventory No. 2354;

x. Shaquille O'Neal Black Game Worn Jersey, Inventory No. 2363;

xi. Jimmy Butler White Game Worn Jersey, Inventory No. 2371;

xii. Jimmy Butler Black Playoffs Game Worn Jersey, Inventory No. 2379;

xiii. Shaquille O'Neal White Game Worn Jersey, Inventory No. 2405;

xiv. Dwayne Wade White Playoffs Game Worn Jersey, Inventory No. 2408;

xv. Chris Bosh Jersey, NBA Identification No. MHE01263;

xvi. Dwayne Wade Jersey, NBA Identification No. MHE00770; and

xvii. Shaquille O'Neal Jersey Number 32, Jersey Size 62, with a 2004-2005 tag.

2. Any duly authorized law enforcement agency may seize and take possession of the forfeited property according to law.

3. Pursuant to 21 U.S.C. § 853(g), no party other than the United States may sell, alienate, alter title, or otherwise dispose of the forfeited property absent further Court order.

4. The United States shall send and publish notice of the forfeiture in accordance with Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n).

5. The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

6. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

7. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

It is further **ORDERED** that upon adjudication of all third-party interests, if any, the Court will enter a final order of forfeiture as to the property in which all interests will be addressed.

Upon notice from the United States that no claims have been filed within 60 days of the first day of publication or within 30 days of receipt of notice, whichever is earlier, then, pursuant to Rule 32.2(c)(2) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(7), this Order shall become a Final Order of Forfeiture and any duly authorized law enforcement agency shall dispose of the property in accordance with applicable law.

**DONE AND ORDERED** in Miami, Florida, this 12 day of June 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE